IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re: :
KAMAND CONSTRUCTION, INC. :
: Case No. 1-03-04018
Debtor :
: Chapter 11
KAMAND CONSTRUCTION, INC. :
Movant :
v. :
:
PROPERTY MANAGEMENT, INC., :
W.S. CAREY ELECTRICAL :
CONTRACTING AND SERVICE, INC., :
H.B. MCCLURE COMPANY, INC. and :
CAPITOL DOOR AND HARDWARE :
CO., INC. :
Objectants :



## ORDER

**A.** **Introduction**

The issue before the Court is whether a constructive trust should be imposed on funds held by the Debtor, Kamand Construction, Inc. ("Debtor") for the benefit of certain subcontractors. The issue arose through objections filed by Property Management, Inc. ("PMI"), Allegheny Electric Cooperative, Inc. ("Allegheny"), W.S. Carey Electrical Contracting and Service, Inc. ("W.S. Carey"), H.B. McClure Company, Inc. ("H.B. McClure") and Capitol Door and Hardware Co., Inc. ("Capitol")(collectively "Objectants") to Debtor's Motion for Interim Use of Cash Collateral (the "Motion"). Objectants asserted that funds held in Debtor's bank account at the date of filing were held in trust for subcontractors and suppliers and were not estate property or cash collateral of Commerce Bank.

1

Debtor, a building contractor, filed its voluntary petition under Chapter 11 on July 8, 2003. On the following day, Debtor filed the Motion and was granted interim relief until a preliminary hearing could be held on July 11, 2003. Commerce Bank, which had a security interest in Debtor's cash and accounts receivable, filed an objection to the Motion, but at the hearing agreed to permit Debtor to use the collateral under certain conditions. A final hearing, with notice to all parties, was held on July 25, 2003. In their pleadings and at the hearing, Objectants asserted that Debtor had received funds from PMI that were subject to a constructive trust and, therefore, were not estate property. A hearing was held on July 31, 2003 to address the constructive trust issue. Testimony was presented by Objectants H.B. McClure, W.S. Carey and PMI and by Debtor. The parties were given an opportunity to file briefs, which they have done. Having considered the testimony and the arguments of counsel, I find that Objectants have failed to carry the burden of establishing by clear, precise and unambiguous evidence the requisite elements for establishing a constructive trust.

**B.    Background**

Prior to the filing of its Chapter 11 petition, Debtor entered into an oral agreement (the Agreement) with PMI[1] to complete certain renovations to the Locust Court Building, 212 Locust Street, Harrisburg, Pennsylvania. The Agreement was made at a meeting called by PMI on February 7, 2003, which was attended by both of Debtors' principals, three agents of Allegheny, two agents of PMI, one of W.S. Carey's principals, and an

---

[1] It is disputed whether PMI was serving a general contractor or an owner's agent for Allegheny under the terms of the contract.

2

agent of H.B. McClure. At the meeting, it was decided that no bidding from the contractors would be necessary. The minutes of the meeting list Debtor as the "General Contractor," W.S. Carey as the "Electrical Contractor," and H.B. McClure as the "HVAC contractor." PMI, not Debtor, selected W.S. Carey or H.B. McClure to do the respective subcontracting work on the project.

Neither during the meeting nor at any later time did PMI consider paying contractors such as W.S. Carey or H.B. McClure directly, or through a joint check arrangement. Neither W.S. Carey or H.B. McClure requested payment terms other than through Debtor. No stipulation against liens was required by Allegheny or executed and filed by the subcontractors.[2] PMI and Debtor agreed that work would be performed on a "time and materials" basis plus fifteen (15%) percent profit. The Locust Court project was an unbonded job; approximately 70% of Debtor's work required bonding. Debtor began work on the project on or about March 3, 2003.

Between the commencement of work and the filing of the bankruptcy petition, Debtor submitted three invoices to PMI requesting payments in an aggregate amount of $221,609.95. Each invoice included the number of hours worked by Debtor's employees, their wages, a list of the amounts paid (or to be paid) to subcontractors and suppliers, and the amount charged for Debtor's overhead and profit. The first invoice was submitted on March 28, 2003 in an amount of $35,164.72. PMI reviewed the invoice for accuracy and forwarded it to Allegheny. Pursuant to Allegheny's approval, PMI paid the invoice. The

---

[2] At the time of the hearing several unpaid subcontractors had threatened to file mechanics' liens against the Locust Court project.

3

funds were deposited in Debtor's bank account at Commerce Bank on April 7, 2003. The second invoice was submitted on April 27, 2003 in an amount of $57,386.25. PMI reviewed the invoice, forwarded it to Allegheny, and, once approved, paid it. The funds were deposited in Debtor's pre-petition bank account at Commerce Bank on May 12, 2003. The third invoice was submitted on June 10, 2003 in an amount of $129,058.98. PMI reviewed the invoice, forwarded it to Allegheny, and paid it. The check for the third invoice was deposited in a new account opened by Debtor at Fulton Bank on June 26, 2003. No other funds were co-mingled with the funds in the Fulton account. Of the three invoices paid by PMI, $28,905.64 was paid to Debtor specifically for its "overhead and profit". Thus, of the three PMI checks, $192,704.31 was not specifically earmarked for Debtor. This is the total amount of funds now at issue.[3]

Between June 26, 2003 and July 11, 2003, Debtor made disbursements from the Fulton account to make payroll for its employees and to provide a retainer to its bankruptcy counsel. The balance in the account of $95,390.89 was wire transferred to the post-petition Commerce account on July 11, 2003 and co-mingled with other Debtor funds.

---

[3] There is no apparent dispute that Debtor is entitled to the $28,905.64 paid on account of its overhead and profit allowances.

4

## C. Discussion

The matter to be decided is whether the $192,704.31 paid from PMI to Debtor should be considered to have been held by Debtor in constructive trust for the subcontractors and suppliers named on Debtor's invoices.

Constructive trusts received sparse treatment in the Bankruptcy Code. Section 541(d) provides that:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. §541(d). As observed by Judge Scholl, although Section 541(d) was included primarily to protect the secondary mortgage market, this provision also excludes interests in property held by the debtor in constructive trust. *In re Sacred Heart Hospital of Norristown*, 175 B.R. 543, 549-550 (Bankr. E.D. Pa 1994). The Third Circuit Court of Appeals has held that property subject to an express or constructive trust is excluded from the estate under Section 541(d). *In re Columbia Gas Systems, Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993).

As a form of restitution, constructive trusts arise as an equitable remedy under state law. Attempts to reconcile the Bankruptcy Code's emphasis on preserving the estate for the benefit of all creditors with a remedy that removes assets from the estate on equitable grounds have produced conflicting results. *See Restitution in Bankruptcy: Reclamation and Constructive Trusts*, Andrew Kull, 72 Am.Bankr.L.J. 265 (1998).

5

AO 72A
(Rev. 8/82)

Unlike the Third Circuit, the Sixth Circuit has resolved this difficulty by holding that constructive trusts are an "anathema to the equities of bankruptcy" and may not be imposed post-petition. *In Re Omegas Group*, 16 F.3d 1443, 1452 (6th Cir. 1994). The *Omegas* court determined that a constructive trust is only an equitable remedy, not an interest in property. *Id.* To the contrary, the Third Circuit has held that Section 541 defines the property of a bankruptcy estate. However, the Circuit has looked to state law to determine whether a property right exists. *In re Nejberger*, 934 F.2d 1300, 1302 (3rd Cir. 1991).

> Pennsylvania courts recognize constructive trusts, which they have defined as: a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition of the retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

*City of Philadelphia v. Heinel Motors*, 142 Pa. Super. 493, 502-03, 16 A.2d 761, 765-66 (1940). *See, Yohe v. Yohe*, 466 Pa. 405, 411, 353 A.2d 417, 420 (1976); *Gee v. Eberle*, 279 Pa. Super. 101, 112, 420 A.2d 1050, 1056 (1980). Under Pennsylvania law, a constructive trust is a fictional trust, an equitable remedy to avoid unjust enrichment Specific intent to create a constructive trust is not required. *In re Joseph B. Dahlkemper Co., Inc.* 165 B.R. 149, 154 (Bankr.W.D.Pa.1994), citing, *Stauffer v. Stauffer*, 465 Pa. 558, 567, 351 A.2d 236, 241 (1976); *Roberson v. Davis*, 397 Pa. Super. 292, 296, 580 A.2d 39, 41(1990); *Denny v. Cavalieri*, 297 Pa.Super. 129, 132, 443 A.2d 333, 335 (1982). Although it is a flexible remedy, Pennsylvania courts have imposed a constructive trust only if a party acquired property "as result of fraud, duress, undue influence, mistake, abuse of a confidential relationship, or other such circumstances

6

suggesting unjust enrichment." *Louis Dolente & Sons v. USF&G*, 252 F. Supp.2d 178, 182 (E.D. Pa 2003)(citations omitted). A constructive trust is not an action in *quantum meruit* seeking to impose personal liability. The remedy is meant to restore particular funds or property to the true owner. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

In addition to a showing of actual or potential unjust enrichment, there also must be a specific trust *res* identified upon which a constructive trust may be imposed. *Gee*, 420 A.2d at 1061 n.9; *Louis Dolente & Sons*, 252 F.Supp at 183. As one of the leading commentators on restitution has stated, "'[c]onstructive trust' is a declaratory judgment about property out of place." Kull, *supra* at 287. Ownership, possession and title to property have been separated through an involuntary transfer usually as a result of fraud, mistake, or coercion. *Id. See Yohe*, 466 Pa. at 411, 353 A.2d at 421; *Sacred Heart Hospital of Norristown*, 175 B.R. at 555.

A claimant in a restitution case usually is seeking a money judgment. Once the debtor files bankruptcy, this remedy no longer is available to satisfy a prepetition claim. No longer is the claimant seeking restitution from the debtor, the claim is now against the creditors of the estate. To prevail against the estate, the claimant must show by evidence that is "clear, direct, precise and convincing." that he has an ownership interest in specific assets. *Roberson*, 397 Pa. Super. at 296, 580 A.2d at 41 *quoting Policarpo v. Policarpo*, 410 Pa. 543, 189 A.2d 171 (1963). *See also, Sacred Heart Hospital of Norristown*, 175 B.R. at 555 (burden of proof for constructive trust is "clear, precise, and unambiguous").

Objectants have failed to sustain the heavy burden of proving fraud, duress, undue

7

influence, mistake, or abuse of a confidential relationship by clear, direct, precise or convincing evidence. Debtor had an oral contract for time and materials to perform as a general contractor on the Locust Court project. Pursuant to their oral agreement, Debtor submitted monthly invoices to PMI, which included documentation of the cost of materials purchased and services provided by various subcontractors. After receiving payment on these invoices, Debtor failed to pay the subcontractors and other creditors with the proceeds of the PMI payments. Objectants infer that by including the amounts owed to each subcontractor on the invoices submitted to PMI, Debtor agreed that it was not entitled to the funds and was only a conduit for transmittal to the subcontractors. Therefore, by failing to remit the amounts due to subcontractors, Debtor "diverted" funds to pay other creditors whose obligations were guaranteed by Debtor's principals. Although this is one possible interpretation of the detailed information on the invoice, Debtor's explanation that the invoices simply justify Debtor's claim for "materials" used in completing the job is equally plausible.

PMI's president testified that when he paid Debtor he expected that Debtor would be paying the subcontractors listed on the invoices. He stated that it was a "natural assumption" that the subcontractors would be paid and that he would not have paid Debtor if he did not believe that Debtor would in turn pay the subcontractors. But Debtor does not dispute that it was obligated to pay the subcontractors who performed work at the site. The disagreement between Objectants and Debtor centers on whether Debtor was required to hold the funds in trust for the subcontractors and, therefore, was unjustly enriched by disbursing the funds to other creditors.

8

Case 1:03-bk-04018-MDF    Doc 56    Filed 08/19/03    Entered 08/19/03 10:02:37    Desc
Main Document    Page 8 of 14

The Objectants must overcome the presumption that the funds received from PMI belong to the Debtor's estate. *Sacred Heart Hospital.* 175 B.R. at 555, *citing, In re McKay,* 110 B.R. 764, 770 (Bankr.W.D.Pa. 1990) and *Metzger v. Metzger,* 338 Pa. 564, 568, 14 A.2d 285, 287 (1940). Although a showing of wrongdoing is not required to impose a constructive trust in every situation, in instances of mistake or accident, some wrongdoing or breach of a confidential relationship must be present to grant this extraordinary remedy. *In re Shareholders Funding, Inc.* 188 B.R. 150, 156 (Bankr.E.D. Pa. 1995) *quoting Sacred Heart Hospital,* 175 B.R. at 556.

There is insufficient evidence in this case that circumstances existed that justify imposing a constructive trust – fraud, duress, undue influence, mistake, abuse of a confidential relationship. *See Louis Dolente & Sons,* 252 B.R at 182. No witness gave testimony to support the elements required to prove fraud. *See Blumenstock v. Gibson,* 811 A.2d 1029, 1034 (Pa.Super.2002) (to prove fraud, plaintiff must demonstrate by clear and convincing evidence: (1) representation; (2) material to transaction at hand; (3) made with knowledge of or recklessness as to falsity; (4) with the intent of misleading another into justifiable reliance; and (6) resulting injury proximately caused by reliance.) Objectants allege no duress, undue influence, or breach of a confidential relationship. Indeed, it appears that Objectant PMI was the "power broker" in this situation. PMI called the meeting where the oral agreement was reached and specifically selected, without bids, Debtor, W.S. Carey and H.B. McClure to do the work. PMI, not Debtor, decided to pay Debtor rather than W.S. Carey and H.B. McClure directly. Objectants do not allege that the payment checks were deposited in Debtor's accounts as the result of a mistake.

9

AO 72A
(Rev. 8/82)

Objectants' sole argument in support of a constructive trust is that Debtors will be unjustly enriched if permitted to retain the PMI payments because those funds rightfully belong to the subcontractors who did the work. This argument is appealing in its simplicity, but it ignores the fact that this kind of "unjust enrichment" occurs in almost any bankruptcy case where a construction industry debtor accepts deposits for future work, uses the funds to pay for materials to complete current jobs instead, and deprives the depositor of his funds when he files for bankruptcy. The Bankruptcy Code simply treats the funds in Debtor's possession as property of the estate and carves out a non-dischargeability exception in certain circumstances. *See,* 11 U.S.C. §523(a). As Judge Thomas has noted:

> While we are mindful that an entity which receives something for no consideration, and not as a gift, is unjustly enriched, we are compelled to observe that if that were the only standard, then every creditor in every bankruptcy case could claim to be the beneficiary of a constructive trust and therefore not subject to the distribution schedules outlined by the Bankruptcy Code.

*In re Globe Store Acquisitions Co., Inc.,* 178 B.R. 400, 404 (Bankr. M.D. Pa. 1995).

The only evidence offered in support of imposition of a constructive trust were Debtor's invoices, the expressed expectation that the subcontractors would be paid from the funds received by Debtor and testimony that the receipts were used to pay creditors in bonded jobs and Commerce Bank.[4] Courts have determined that constructive trusts

---

[4] At the time of the hearing it was unclear as to whether the subcontractors ultimately would suffer any loss. Since a stipulation against liens was not filed, the subcontractors may be able to file mechanics liens. Testimony was offered that several unpaid subcontractors had threatened to file liens. Should this occur, the claims of Allegheny (and perhaps PMI) against the Debtor no longer would be contingent.

10

should be imposed to protect subcontractors in other cases, but the situations are strikingly dissimilar to the case at bar. In *Gebco Investment Corporation*, 641 F.2d 143 (3d Cir. 1981), the Third Circuit Court of Appeals reversed the decision of the bankruptcy court and held that a subcontractor on a building project had a right to receive undisbursed construction mortgage funds superior to that of the bankruptcy trustee. In *Gebco* the general contractor agreed with the owner that a stipulation against liens would be filed. The agreement with the bank financing the project provided that certain funds would be lent "only for the payment of labor and material costs in the construction of the [i]mprovements and that [a]ll monies borrowed or advanced . . .will be applied entirely and exclusively for the payment of the labor and materials used in the construction." *Id.* at 145. The general contractor was required to provide a release of liens before the bank was obligated to disburse funds, and the bank had the option to advance payments directly to the subcontractors. *Id.* The bank did not guarantee payment to the subcontractors, but bank officials did provide assurances to subcontractors that funds were being escrowed and would be disbursed when the project was completed. When the debtor filed a petition in bankruptcy, both the trustee and the subcontractors laid claim to the funds held in escrow by the bank. The Third Circuit held that the subcontractor was entitled to recover as a third party beneficiary, as an equitable assignee and on unjust enrichment.

The instant case lacks such persuasive evidence that the subcontractors have similar equitable claims to property of Debtor. Similarly, in *In re Temp-Way Corporation*, 80 B.R. 699 (1987), Judge Scholl determined that a supplier was entitled to recover funds from the debtor on a constructive trust theory because the debtor and the supplier had

11

entered into a joint check agreement which provided that a check issued by a third party would be endorsed by debtor and sent to the supplier. *Id.* at 701. "The facts of the instant case require us to hold that the extent of the Debtor's interest in the joint check is limited to bare legal title and that the Plaintiff, alone, has an equitable interest in the joint check and the funds it represents." *Id.* at 702.

### D. Conclusion

Although Objectants have demonstrated that Debtor failed to fulfill its obligation to its creditors, they have been unable to establish that Debtor was unjustly enriched when it deposited the payments received from PMI.[5] For these reasons, the Court shall and

---

[5]

Since I have determined that Debtor was not unjustly enriched, it is unnecessary for me to determine whether Objectants have identified a specific trust res. Although not addressed in their brief, Objectants argued at the hearing that they were not required to trace the funds that they admitted were co-mingled with other funds of the Debtor. Clearly, this position is incorrect. [W]here 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant.]' Restatement of Restitution [*supra*] § 215, Comment *a*, at 867. *Great-West Life & Annuity Insurance Company*, 534 U.S. at 213-214. To support their claim, Objectants had to identify the funds in which they claimed an interest. If the funds were co-mingled, then Objectants would be required to identify and trace their trust property. *In re Columbia Gas Systems, Inc.* 997 F.2d at 1063. If the relevant date for tracing was the date of the filing of the petition, there were segregated funds in an amount of $129,058.98 on deposit in the Fulton Bank account that had not been co-mingled with other funds. (The funds in question were deposited on June 26, 2003 and no checks were drawn on or deposits made into the account until July 11, 2003.) If a date subsequent to July 11, 2003 was determined to be the relevant date, tracing under the lowest intermediate balance rule would be required. On July 11, the funds in the Fulton Bank account were co-mingled with funds from other projects in Debtor's Commerce Bank account. *See Id; In re Supermarkets of Cheltenham, Inc.* 1999 WL 260956 (Bankr. E.D. Pa); *In re Mushroom Transportation Company, Inc.* 227 B.R. 244 (Bankr. E.D. Pa 1998).

12

hereby does deny the Objectants' request for imposition of a constructive trust. The Objections to the Motion are overruled.

BY THE COURT

*Mary D. France*
MARY D. FRANCE
BANKRUPTCY JUDGE

HARRISBURG, PENNSYLVANIA
DATED: August 19, 2003

13

# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

## CERTIFICATE OF SERVICE

The undersigned deputy clerk hereby certifies that a copy of this document was mailed today to the parties named below at their respective addresses as shown below.

LLOYD R PERSUN ESQUIRE
METTE EVANS & WOODSIDE
3401 NORTH FRONT STREET
PO BOX 5950
HARRISBURG, PA 17110-0950

GEORGE J BACHRACH ESQUIRE
WHITEFORD TAYLOR & PRESTON LLP
7 ST PAUL STREET
BALTIMORE, MD 21202-1626

KAMAND CONSTRUCTION INC
203 LYNNDALE COURT
MECHANICSBURG, PA 17055

US TRUSTEE'S OFFICE
228 WALNUT STREET 11TH FLOOR
HARRISBURG PA 17101

LAWRENCE G FRANK ESQUIRE
2023 NORTH SECOND STREET
HARRISBURG PA 17102

LARRY L MILLER ESQUIRE
ATTY FOR CIESCO INC
1423 STATE ROAD
DUNCANNON, PA 17020

JOSHUA D COHEN ESQUIRE
HARTMAN UNDERHILL & BRUBAKER
221 EAST CHESTNUT STREET
LANCASTER, PA 17602

ERIC L BROSSMAN ESQUIRE
305 NORTH FRONT STREET
PO BOX 1003
HARRISBURG, PA 17108-1003

DAVID J LANZA ESQUIRE
JOHNSON DUFFY STEWART & WEIDNER
301 MARKET STREET
LEMOYNE, PA 17043

ROBERT E CHERNICOFF ESQUIRE
2320 NORTH SECOND STREET
PO BOX 60457
HARRISBURG, PA 17106-0457

THOMAS O WILLIAMS ESQUIRE
REAGER & ADLER PC
2331 MARKET STREET
CAMP HILL, PA 17011-4642

SAMUEL L ANDES ESQUIRE
ANDES & VAUGHN
525 NORTH 12TH STREET BOX 168
LEMOYNE, PA 17043

LISA M CIOTTI ESQUIRE
KOESTEL CIOTTI BERINGER & SCHEIDT
501 PARK ROAD N
PO BOX 6263
WYOMISSING, PA 19610-6263

Dated: August 19, 2003

_Nadine Petrina_
Nadine Petrina
deputy Clerk