# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| **KAMAND CONSTRUCTION, INC.** | * | Chapter 11 |
| Debtor | * | |
| | * | Case No.1:03-bk-04018 MDF |
| | * | |
| | * | |
| | * | |

## OPINION

### Procedural and Factual History

This matter is before the Court on the objection of NorthStar Insurance Ltd. ("NorthStar") to the First Amended Disclosure Statement of Kamand Construction, Inc. ("Debtor"). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (L).[1] For the reasons stated below, the Court will sustain the objection.

### Background

On July 8, 2003, Debtor filed for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Prior to filing, Debtor conducted business in Maryland and central Pennsylvania as a commercial construction contractor. Its typical projects, both bonded and non-bonded, were communications sites, cell towers, municipal buildings and construction work at military bases. Debtor completed its unfinished bonded construction projects on or before the

---

[1]This Memorandum Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

1

Petition Date and continued limited business operations until it ceased all operations on January 31, 2004.

NorthStar is a captive insurance company that provides reinsurance for insurance programs of its subscribers (the "NorthStar Insurance Programs"). The NorthStar Insurance Programs are fronted for NorthStar and its subscribers by a "Program Insurer" (the "Program Insurer"). When Debtor began participating in the NorthStar Insurance Programs, Legion Insurance Company ("Legion") was the Program Insurer. At the Petition Date, The Pennsylvania Manufacturing Association Insurance Group ("PMA") served as the Program Insurer.

Kamand NorthStar Associates LP ("KNA") was established to act as Debtor's agent with regard to NorthStar. On July 22, 2001, NorthStar and Debtor, acting through KNA, entered into a Shareholders Agreement and a Subscription Agreement (together, the "Agreement") in which NorthStar would provide for Debtor workers' compensation, automobile liability, and general liability insurance (the "Kamand-NorthStar Insurance Programs"). Under the terms of the Agreement, Debtor paid premiums to NorthStar who reimbursed the Program Insurer for all claims it paid under the Kamand-NorthStar Insurance Programs. NorthStar secured its payments to the Program Insurer through a letter of credit (the "Program Insurer Letter of Credit"), initially obtained through UBS, Ltd. ("UBS"). Later Royal Bank of Canada ("RBC") was substituted for UBS as the issuer.

As a condition of the issuance and maintenance of the Program Insurer Letter of Credit, each NorthStar subscriber was required to provide a letter of credit in the amount of its share of the projected claim reimbursements by NorthStar to the Program Insurer, to the extent such

2

reimbursements exceeded the claims premium. On July 30, 2002, Commerce Bank, N.A. ("Commerce") issued a letter of credit in the amount of $466,066.00 (the "LOC") in favor of UBS.[2] Debtor's agreement to indemnify Commerce for all amounts paid under the LOC was secured by a first priority lien on all Debtor's accounts, including all insurance, general intangibles and other accounts proceeds. NorthStar remains obligated to the Program Insurer relating to insured claims under these programs. Debtor continues to be obligated to NorthStar for the amounts NorthStar is obligated to pay to the Program Insurer arising from insured claims under the Kamand-NorthStar Insurance Programs, to the extent such payments exceed the premiums paid. The LOC secures Debtor's obligation to NorthStar under the Kamand-NorthStar Insurance Programs and NorthStar's obligations to RBC for the Program Insurer Letter of Credit.

On August 11, 2005, Debtor filed its First Amended Disclosure Statement ("Amended Disclosure Statement") and First Amended Plan of Reorganization ("Amended Plan").[3] NorthStar objected to the Amended Disclosure Statement asserting that the discussion of Debtor's proposed treatment of the LOC was incorrect and materially misleading and that the document failed to provide adequate information. Filed ostensibly as an objection to the Amended Disclosure Statement, the objection substantively was an objection to the Amended Plan. A hearing was held on August 29, 2005, at which time the Court determined, and the

---

[2] The Stipulation of Facts submitted in connection with the hearing on NorthStar's Objection to Debtor's Disclosure Statement states that the LOC was issued pursuant to a Letter of Credit Agreement and Note and Reimbursement Agreement between Commerce Bank, N.A. of Cherry Hill, New Jersey, and Commerce Bank/Harrisburg, N.A. as Account Party. For purposes of this Opinion, both Commerce units are treated as one entity. On February 11, 2005, amendments were made to the LOC to reflect the substitution of RBC as the beneficiary.

[3] The document filed by Debtor is titled as a Plan of Reorganization, but it provides for the liquidation of Debtor's business.

3

parties agreed, that Debtor would be unable to confirm a plan unless the Court approved termination of the LOC over the objection of NorthStar. The Court agreed to determine whether, on stipulated facts and as a matter of law, the Amended Plan could be confirmed over NorthStar's objection. The matter is fully briefed and ripe for decision.

## Discussion

Debtor and Commerce (collectively "Proponents") assert that the Court has the power pursuant to 11 U.S.C. §105(a): (1) to terminate the LOC; (2) to enjoin, after appropriate notice, non-consenting claimants under the Kamand-NorthStar Insurance Programs; and (3) release NorthStar, Legion, and PMA as necessary to implement the Amended Plan. The Amended Plan proposes to terminate the LOC if no claims are filed by the deadline or the amount of the claims filed does not exceed the amount already contributed by Debtor towards the claims.[4] Further, NorthStar is required to return to Debtor any unused premium balance not paid out in claims. Proponents assert that if future claims are enjoined and NorthStar, Legion and PMA are released from their obligations on the claims covered by the Kamand-NorthStar Insurance Programs, the LOC no longer will be necessary and can be terminated. They argue that terminating the LOC will allow Commerce to release its liens, thus freeing assets for liquidation and distribution to unsecured creditors.

    a.    *Letters of Credit – The Independence Principle*

A letter of credit is "an engagement by an issuer, usually a bank, made at the request of a customer for a fee, to honor a beneficiary's drafts or other demands for payment upon satisfaction of the conditions set forth in the letter of credit." *Tudor Development Group, Inc. v.*

---

[4] The Deadline proposed in the Amended Plan was March 31, 2006.

*United States Fidelity & Guaranty Co.*, 968 F.2d 357, 360 (3d Cir. 1992). A letter of credit is a series of three separate contracts. *Insurance Co. of N. Am. v. Heritage Bank, N.A.*, 595 F.2d 171, 173 (3d Cir. 1979); *Demczyk v. Mutual Life Ins. of NY (In re Graham Square)*, 126 F.3d 823, 827 (6th Cir. 1997). The first contract is between an obligor and an obligee. In the instant case, Debtor obtained insurance coverage through NorthStar creating the first contract. The second contract arises between the party requesting the issuance of the letter of credit and the issuing bank, in this case Debtor and Commerce, respectively. The third contract is between the issuing bank, here Commerce, and a beneficiary, in this case RBC. *See OHC Liquidation Trust v. Discover Re (In re Oakwood Homes Corporation)*, ___ B.R. ___, 2006 WL 1314664, *4 (Bankr. D. Del May 10, 2006). "The relationship between each pair of parties involved in a letter of credit transaction is entirely independent, although each relationship is necessary to support a letter of credit, somewhat like the three legs of a tripod." *Oakwood Homes* at *5 (quoting *P.A. Bergner & Co. v. Bank One (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1114 (7th Cir. 1998)).[5]

Letters of credit are governed by state law, specifically Article 5 of the Uniform Commercial Code (the "UCC"). The express terms of the LOC issued by Commerce also provide that it is subject to the Uniform Customs and Practices for Documentary Credits (1993 Revision) International Chamber of Commerce, Brochure No. 500 (the "UCP").[6] Section 5-106 of the UCC describes the conditions under which a letter of credit may be terminated.

---

[5] The LOC transaction at issue in the within case is a variant of the traditional "tripod" model because the direct beneficiary of the LOC is RBC and not NorthStar. However, NorthStar is an indirect beneficiary of the LOC since its existence enables NorthStar to perform under its agreement with RBC in connection with the issuance of the Program Insurer Letter of Credit.

[6] The UCP is a recording of common practice that governs letters of credit and supplements the provisions of the UCC.

5

6

> After a letter of credit is issued, rights and obligations of a beneficiary, applicant, confirmer and issuer are not affected by an amendment or cancellation to which that person has not consented except to the extent the letter of credit provides that it is revocable or that the issuer may amend or cancel the letter of credit without that consent.

UCC § 5-106(b); 13 Pa. Cons. Stat. Ann. § 5106(b). The UCP provides that "[i]n absences of such indication [that the letter of credit is revocable] the Credit shall be deemed to be irrevocable." UCP Art. 6(c). Thus, an irrevocable letter of credit, such as the LOC, may not be cancelled without the consent of the beneficiary unless authorized within the letter of credit. "The salient feature of a letter of credit and the principal reason for its use in commercial transactions is the 'independence principle.'" *Tudor Development Group, Inc.*, 968 F.2d at 360. The independence principle provides that the obligation running from the issuer of a letter of credit to the beneficiary is independent from the underlying contract between the issuer's customer and the beneficiary. *Id.* In Pennsylvania, this principle is codified at 13 Pa Cons. Stat. Ann. § 5103(d):

> Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

UCC § 5-103(d); 13 Pa. Cons. Stat. Ann. § 5103(d). "It is fundamental that a letter of credit is separate and independent from the underlying business transaction between the bank's customer and the beneficiary. . . . The arrangement is essentially an attempt to substitute the credit of the issuing bank for that of a customer." *Lakeside at Pole Creek, LLC v. Tabernash Meadows, LLC (In re Tabernash Meadows LLC),* 2005 WL 375600, at *3 (Bankr. D. Colo., Feb. 15, 2005) (internal quotations and citations omitted). Therefore, if RBC draws down on the LOC, Commerce must honor its commitment regardless of whether or not Debtor has performed the

7

obligations required by its agreement with NorthStar. The LOC effectively shifted the risk of Debtor's non-performance from NorthStar to Commerce. Commerce bargained for and received payment in consideration of this agreement and accepted the risk that Debtor would become insolvent or default. "Under the independence principle, an issuer's obligation to the letter of credit's beneficiary is independent from any obligation between the beneficiary and the issuer's customer. All a beneficiary has to do to receive payment under a letter of credit is to show that it has performed all the duties required by the letter of credit." *Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.)*, 831 F.2d 586, 590 (5th Cir. 1987). Clearly, under non-bankruptcy law neither Commerce nor the Debtor may terminate the LOC without the consent of the beneficiary. *See MRM Security Sys., Inc. v. Citibank, N.A.*, 1997 WL 198074, at *4 (S.D.N.Y. 1997) (issuing bank could not unilaterally modify terms of letter of credit subject to UCP).

      b.      *Treatment of the LOC in the Amended Plan*

As a general proposition, property of the estate under 11 U.S.C. § 541 encompasses rights and interests of a debtor arising from ordinary contractual relationships. *See* 5 *Collier on Bankruptcy* ¶ 541.08[4] at 541-49 (15th ed. rev. 1996). Federal courts, however, typically look to state law to determine the existence and scope of a debtor's contract rights. *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 244 (3d Cir. 2001). *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.") (footnote omitted). However, there is a "'well-established' rule of bankruptcy law that 'a letter of credit and the proceeds therefrom are not property of the debtor's estate.'" *Int'l Financial Corp. v. Kaiser Group Int'l Inc. (In re Kaiser Group Int'l Inc.)*, 399 F.3d 558, 566 (3d Cir. 2005)

(quoting *Matter of Compton Corp.*, 831 F.2d 586, 589 (5th Cir. 1987)); *Hechinger Inv. Co. of Del. Inc. v. Allfirst Bank (In re Hechinger Inv. Co. of Del., Inc.),* 282 B.R. 149, 161 (Bankr. D. Del. 2002); *In re Metro Communications, Inc.,* 115 B.R. 849, 854 (Bankr. W.D. Pa. 1990) (draws by creditors on letters of credit not avoidable as preference; letters of credit and proceeds not property of the estate); *compare Solow v. PPI Enterprises (U.S.), Inc. (In re PPI Enterprises (U.S.), Inc.)*, 324 F.3d 197 (3rd Cir. 2003)(lease that defined security deposit to include letter of credit and provided that tenant would provide replacement cash in the event of a draw determined to be security deposit and subject to section 502(b)(6) cap).[7] Generally, bankruptcy courts have set aside the independence principle and considered proceeds of a letter of credit as property of the estate only when fraud exists in the underlying transaction. *Tabernash Meadows LLC,* 2005 WL 375600, at *3; *see* Gerald T. McLaughlin, *Letters of Credit and Illegal Contracts: the Limits of the Independence Principle,* 49 Ohio St. L.J. 1197, 1135 (1989). In the within case, Proponents do not argue that the LOC or its proceeds are property of the estate. They assert, however, that together 11 U.S.C. § 105(a) and §1123(b)(6)[8] empower this Court to terminate the LOC and enjoin the claims of non-consenting creditors against Debtor, NorthStar and PMA.

---

[7] Letters of credit are addressed in bankruptcy cases usually in the context of an injunction by the debtor against the distribution of the proceeds of a letter of credit or when a trustee or debtor-in-possession is pursuing the proceeds as a preference. Courts routinely have denied the relief sought in these actions. *Kaiser Group*, 399 F.3d at 566; *see Sabratek Corp. v. LaSalle Bank, N.A. (In re Sabratek Corp.)* 257 B.R. 732, 735-36 (Bankr. D. Del. 2000) (citing cases in which bankruptcy courts denied injunctions sought to prevent disbursement of letter of credit proceeds.)

[8] Section 1123 describes mandatory and optional provisions of a chapter 11 plan. Section 1123(b)(6), in relevant part, provides that "a plan may . . . include any . . . provision not inconsistent with the applicable provisions of this title." 11 U.S.C. §1123(b)(6).

9

c. *The Court's jurisdiction under 11 U.S.C. § 1334(b)*

Proponents assert that termination of the LOC is authorized by sections 105(a) and 1123(b)(6) because the affected parties will be provided with releases through the Amended Plan as effectuated by the proposed third-party injunctions. In the Amended Plan, Debtor proposes to enjoin and release the claims of the non-consenting claimants under the Kamand-NorthStar Insurance Programs against the Debtor, NorthStar and the Program Insurers. Proponents argue that the Court has jurisdiction to enjoin and release such claims as necessary to implement the Amended Plan because a draw on the LOC will trigger the indemnity agreement between Debtor and Commerce. Proponents urge the Court to focus on the impact on Debtor's estate of such a draw when considering the Court's jurisdiction to enjoin and release third parties.

NorthStar asserts that, although some courts have held that "related to" jurisdiction extends to disputes concerning a letter of credit having a direct impact on the estate, these cases involved the rights of parties in contractual privity with the Debtor and rights directly connected to the estate. NorthStar asserts that Debtor's proposed plan goes beyond those relationships and affects the rights of third parties not in privity with Debtor and, therefore, exceeds the Court's "related to" jurisdiction.

This Court has jurisdiction to approve or disapprove Debtor's Amended Disclosure Statement and Amended Plan. More problematic is whether the Court has jurisdiction to release non-debtor third parties, some of whom are not in privity with Debtor. This Court's subject matter jurisdiction under 11 U.S.C. §1334(b) and power under 11 U.S.C. §105(a) are separate issues. "Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power under section 105 is the scope and forms of relief the court may order in

10

Case 1:03-bk-04018-MDF    Doc 376    Filed 06/07/06    Entered 06/09/06 09:46:34    Desc
Main Document      Page 10 of 17

an action in which it has jurisdiction." *In re Digital Impact, Inc*. 223 B.R. 1, 8 (Bankr. N.D. Okla. 1998) (quoting *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.*), 885 F.2d 621, 624 (9th Cir. 1989).

A bankruptcy court's "related to" jurisdiction under 28 U.S.C. § 1334 is broad. *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984) (a proceeding is "related to" a bankruptcy case if the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy). It can extend beyond issues involving a debtor and assets of the estate to matters between non-debtor third parties affecting the debtor. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The "conceivable effect" test of *Pacor* is not without limits, however, especially when claims have not yet accrued and future litigation must occur before a debtor's estate will be impacted. *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2000). Further, I cannot presume that I possess the jurisdiction to enjoin third-party actions against non-debtors. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214, fn 12 (3d Cir. 2000). Here, there is a jurisdictional nexus between Commerce and Debtor. If NorthStar is released from liability for claims against Debtor and the LOC is terminated, Commerce's security interest will be released, freeing assets for liquidation to benefit unsecured creditors. But as discussed above, the security agreement between Commerce and Debtor is distinct from the LOC issued by Commerce for the benefit of RBC. RBC's rights under the LOC are independent from any of the underlying obligations between Debtor, NorthStar and the Program Insurer. Without examining possible subject matter jurisdiction issues "related to" the potential claims among other parties to the Kamand-NorthStar Insurance Program, it is clear that I lack "related to" jurisdiction to terminate the LOC.

*d.* *The Court's power under 11 U.S.C. §105(a)*

Even if I were to find that I had subject matter jurisdiction over the termination of the LOC, the releases and injunctions sought by Debtor are beyond the scope of my powers under section 105. The equitable powers of the Bankruptcy Court are set forth in section 105(a) of the Code:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. §105(a). The Court of Appeals observed in *Continental Airlines,* 203 F.3d at 211, that a bankruptcy court's equitable powers under section 105(a) "supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code." *Id.* The Court cited the section's limited scope and warned that it does not "create substantive rights that would otherwise be unavailable under the Bankruptcy Code." *Id.* (quoting *United States v. Pepperman*, 976 F.2d 123, 131(3d Cir. 1992)). Section 105(a) is a "powerful, versatile tool," but it may be used only to further other substantive provisions of the statute. *Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*, 411 F.3d 452, 455 (3d Cir. 2005).

Juxtaposed against the expansive grant of power under section 105(a) is section 524(e), which explicitly states that a debtor's discharge does not affect "the liability of any other entity on, or the property of any other entity for such debt[.]" 11 U.S.C. § 524(e). Three Circuits have interpreted this provision strictly and have held that non-debtors may not be discharged through

12

reorganization plans.[9] The Second, Fourth, Sixth and Seventh Circuits have allowed permanent injunctions against claimants and third-party releases under certain circumstances.[10] In *Continental Airlines*, the Third Circuit Court of Appeals did not issue a blanket rule describing the conditions under which releases and permanent injunctions of non-debtor obligations would be permissible because it found that, under the most flexible approach, the releases and injunctions in Continental's plan were objectionable. *Continental Airlines*, 203 F.3d at 214 ("we need not establish our own rule regarding the conditions under which non-debtor releases and permanent injunctions are appropriate or permissible"). However, the Court left the door open to approving non-debtor releases and injunctions if the injunction was fair to the enjoined party and "given in exchange for reasonable consideration." *Id.* at 215. According to the Court, "the hallmarks of permissible non-consensual releases [are]– fairness, necessity to the reorganization, and specific factual finding to support these conclusions. . . ." *Id.* at 214.

Proponents assert that the Amended Plan satisfies the standard suggested in *Continental*. The Amended Plan proposes that after notice all claims under the Kamand NorthStar Insurance Program will be channeled into a fund consisting of: (i) the Debtor's premium payments to

---

[9] *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995); *Resorts International, Inc. v. Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995); *Landsing Diversified Properties II v. First National Bank & Trust Co. (In re Western Real Estate Fund, Inc.)*, 922 F.2d 592 (10th Cir. 1991), *modified sub nom, Abel v. West*, 932 F.2d 898 (10th Cir. 1991).

[10] *In re Specialty Equipment Cos. Inc.,* 3 F.3d 1043 (7th Cir. 1993)(consensual and non-coercive releases permitted); *Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)* 280 F.3d 648 (6th Cir. 2002) cert. denied, 537 U.S. 816, 123 S.Ct. 85, 154 L.Ed. 2d 21 (2002)(non-consensual third party injunctions authorized when "unusual circumstances" present); *In re Drexel Burnham Lambert Group, Inc*., 960 F.2d 285 (2nd Cir. 1992) (third party injunction permitted if "important" to reorganization); *Menard-Sauford v. Mabey (In re A.H. Robins Company, Inc.),* 880 F.2d 694 (4th Cir. 1989) (success of plan required prevention of suits against parties with indemnity claims against debtor).

13

NorthStar (which Debtor alleges are held in reserve), (ii) NorthStar's earnings on such reserves, and (iii) draws under the LOC if the premium payments and earnings are not adequate to pay claims under the Amended Plan and NorthStar's overhead. They claim that the fund is substantial when compared to the Debtor's claims history under the Kamand NorthStar Insurance Programs. Further, Proponents assert that without this injunction and the termination of the LOC, the Amended Plan cannot be implemented. They argue that because termination of the LOC is necessary to implement the plan, the Court is authorized to enjoin claimants and release Debtor and the insurers as necessary to implement the Amended Plan.

The parties have stipulated to the material facts regarding the proposed releases and injunctions; therefore, the matter can be decided as a matter of law. The *Continental* Court held that the factual circumstances presented before it did not support the injunction and release provisions in the plan. There is nothing in the instant case that supports a different conclusion here. Although entertained as a concept by many courts, most cases that authorize injunction and release provisions involve "global settlement of massive liabilities against the debtors and co-liable parties" and "substantial financial contributions from non-debtor co-liable parties." *Continental*, 203 F.3d at 213.

The facts here fail to meet the minimal standard alluded to in *Continental*. The Amended Plan proposes to release NorthStar, Legion and PMA from obligations on any claim covered by the Kamand-NorthStar Insurance Programs and to enjoin Legion, PMA and RBC from making any draws under the Program Insurer Letter of Credit and the LOC. As in *Continental*, the possibility of liability in the future does not make the non-debtor release and injunction necessary to the success of Debtor's reorganization. Under the Kamand-NorthStar Insurance

14

Programs and the letters of credit securing them, no Debtor liability nor draw upon the letters of credit occur unless the insured claims under the Kamand-NorthStar Insurance Programs exceed the applicable portion of the premiums. A draw on the LOC in the future is not certain. Consequently, Debtor's liability to Commerce is merely contingent. "The question of necessity requires demonstration that the success of the debtor's reorganization bears a relationship to the release of non-consensual parties, and that the releasees have provided a critical financial contribution to the debtor's plan that is necessary to make the plan feasible in exchange for receiving a release of liability." *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607 (Bankr. D. Del. 2001). Commerce is not providing consideration by agreeing to release Debtor's collateral once the LOC is terminated. It is contractually bound to satisfy the liens once it no longer is liable on the LOC. No other consideration for termination of the LOC is proposed. Therefore, even if this Court were to assume that the Third Circuit would permit non-debtor releases and permanent injunctions of non-debtor obligations, this plan does not present the extraordinary circumstances required to meet the minimum standards cited in *Continental*.

Further, although not considered as a factor in *Continental*, no plans authorizing third party non-debtor releases and injunctions have been approved in the face of contrary state law. "Although Congress gave this Court and the Bankruptcy Court expansive powers to protect debtors, no provision of law permits interference with letter of credit contracts to which no debtor is a party." *First Fid. Bank, N.A. v. Prime Motors Inns, Inc. (In re Prime Motor Inns, Inc.)*, 130 B.R. 610, 614 (S.D. Fla. 1991). "The Bankruptcy Court is not empowered to interfere with a contract between non-debtors because it perceives that carrying out the contract could adversely affect the estate." *Id., citing United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th

Cir. 1986). "[S]ection 105 does not authorize relief inconsistent with more specific law." *In re American Hardwoods*, 885 F.2d 621, 625 (9th Cir. 1989). The UCC and UCP clearly govern this area of law. I cannot conclude that guidance provided in *Continental* was intended to authorize this Court to trump state law regulating the rights of parties to letters of credit.[11]

Although this factor is not addressed specifically in the Third Circuit's analysis of third-party injunctions and releases, the attenuated connection between Debtor and the parties Debtor proposes to affect in its plan also is troubling. Only NorthStar and Commerce have a contractual relationship with Debtor; PMA, Legion and RBC are not in contractual privity. To approve a plan that enjoins and releases third parties so far removed from Debtor and the estate stretches to the breaking point both the concept of "related to" jurisdiction and the equitable powers of the Court. The Kamand-NorthStar Insurance Program was structured to insulate certain parties from the default of other parties. In the absence of fraud, it would be improper for the Court to disregard these carefully negotiated agreements.

---

[11] The parties stipulated that the LOC is subject to the provisions of the UCP.

## Conclusion

For the reasons set forth above, the Court will sustain the Objection of NorthStar Insurance LTD. to Debtor's First Amended Disclosure Statement.

An appropriate order follows.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: June 7, 2006

*This document is electronically signed and filed on the same date.*